UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA CANTER, Individually and as
Next Friend of her Minor Children:
Ro.C., A.C., Ru.C., K.C.;
SUSAN CANTER, Individually and as Next
Friend of her Minor Children: D.C., V.C.,
Z.R.A.; CHRISTOPHER CANTER; and
LATASHA CANTER,

                Plaintiffs,

v.                                          CASE NO. 05-74791
                                          HON. LAWRENCE P. ZATKOFF

KISSIMMEE REEVES, LUJUANA WARREN,
TANDA REYNOLDS, TOM BRIDEAU,
MARY PRELESNIK, MAHTINA RUBRITIUS,
and JAY NILES,

                Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 1, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter comes before the Court on the following motions: Motion for Judgment or Alternatively to Dismiss by Defendants Kissimmee Reeves, Lujuana Warren, Tanda Reynolds, Tom Brideau, Mark Prelesnik, and M. Rubritius [dkt 33]; Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, Alternatively, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) by Defendant Jay Niles [dkt 34]; and Cross-Motion for Summary Judgment by all Plaintiffs [dkt 35]. The Cross-Motion for Summary Judgment by all Plaintiffs was untimely

filed; accordingly, the Court DENIES this Cross-Motion [dkt 35]. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted. For the reasons set forth below, the Motion for Judgment or Alternatively to Dismiss by Defendants Kissimmee Reeves, Lujuana Warren, Tanda Reynolds, Tom Brideau, Mark Prelesnik, and M. Rubritius [dkt 33] is GRANTED; and the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, Alternatively, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) by Defendant Jay Niles [dkt 34] is GRANTED.

## II. BACKGROUND

Plaintiff Linda Canter has been a foster parent for approximately 40 years. At the time of the occurrences giving rise to the present suit, Plaintiff Susan Canter, Linda Canter's adult daughter, lived in the same home as Linda with her four adopted children in an upstairs "apartment." Between Linda and Susan, the Canters had nine minor children living with them in 2003. Each one of the five children living with Linda came from abusive or neglectful families and suffered from physical, mental, or emotional disabilities. Although the foster children are not biologically related, they are related by adoption.

Three of the children were involved in the underlying events and warrant special introductions. Susan's child, C.C., is a 15-year-old "problem child" who has spent time in juvenile detention.[1] K.C., 14, is Linda's adopted son and has been so since he was a two-year-

---

[1] All ages referenced herein correlate to the children's ages at the time of the occurrences giving rise to the present suit.

old. K.C. suffers from brain damage because his biological mother threw him out of a window when he was a baby. Ro.C., 11, is Linda's most recently adopted child. Ro.C. comes from a birth family that had pervasive multi-generational incest and has a history of sexual abuse, having been victimized by more than one perpetrator in her family. Because of the abuse, Ro.C. is developmentally disabled. Ro.C. came to Linda from another foster family at least in part because the former foster parents thought that Ro.C. was acting out sexually with their son. When Ro.C. came to Linda, the Family Independence Agency ("FIA")[2] warned Linda that, given her history, Ro.C. is at risk to be victimized again or to act out sexually in inappropriate ways.

On December 16, 2003, at approximately 10:30 a.m., Ro.C., a special-education student attending public school, informed her teacher that she had been sexually assaulted by her 14-year-old adopted brother, K.C. Through a series of interviews, Ro.C. revealed that the assaults were frequent and as recent as the previous day. Although Ro.C. had difficulty describing the assaults, she eventually revealed that K.C. had penetrated her. For reasons unknown, Ro.C. had not told Linda or Susan about K.C.'s sexual assaults. Ro.C. also indicated that her 15-year-old nephew, C.C., had previously molested her. Ro.C. had told Linda about the incidents with C.C. In response, Linda allegedly yelled at C.C. and kicked him out of the house. Although Ro.C. was under the impression that C.C. had been sent to juvenile detention for his actions against her, a later investigation revealed that he returned to juvenile detention to continue a sentence on unrelated charges after a short release pass to go home. Since his return to the Canter home, C.C. has not molested or otherwise assaulted Ro.C.

---

[2] The FIA is now known as "Child Protective Services." For the sake of simplicity and to avoid confusion, the Court will refer only to FIA throughout this Opinion.

Ro.C. was taken to Foote Hospital where she provided a statement consistent with the one provided at school earlier in the day. A medical examination revealed evidence of sexual activity in the form of rashes and abrasions.

At approximately 1:00 p.m., the school social worker made a report to the FIA. At this stage in the developments, no allegation of parental abuse had been lodged against either Linda or Susan Canter. Defendant Kissimmee Reeves, the FIA caseworker assigned to the investigative stage of the process cooperated in a joint investigation with law enforcement as required by Mich. Comp. Laws § 722.628(3)(b), (4). At that time, Reeves was reporting to supervisors Defendant LuJuana Warren and Defendant Tanda Reynolds. Officer Kevin Ambs of the Columbia Township Police Department represented the law-enforcement branch of the investigation. Reeves and Ambs visited Ro.C.'s school, interviewed Ro.C., her teacher, and the school social worker, and wrote reports about their findings. Upon completion of the interview with Ro.C., Ambs took her into protective custody.

Some discrepancies exist regarding the origin of the order, but it was nonetheless ordered that all of the children in the Canter home, excepting C.C., K.C., and Virginia—a wheelchair-bound woman with severe disabilities—be removed from the Canter home and temporarily placed elsewhere. Regardless of who made the order, the impetus behind the order was Defendants' belief that both Susan and Linda Canter had reason to know of the sexual molestation and/or assaults of Ro.C. but failed to protect her adequately. K.C. and C.C. were to be left in the home because their previous assaults on Ro.C. increased the potential risk to any other children they might encounter in other surroundings. Because Ambs had other responsibilities to attend to, he asked Defendant Officer Jay Niles to assist in the removal of the children. In doing so, Ambs briefed Niles on the situation between K.C., C.C., and Ro.C. and

4

the possible neglectful supervision on the part of Linda and Susan. Niles did not conduct any investigation on his own but rather relied on Ambs's determination that the "minor children in the home were in physical danger if they were not removed from the home as soon as possible." Niles, standing in for Ambs, along with Reeves and the other Defendant employees of FIA, proceeded to the Canter home that evening to commence the removal of the children without a court order or a removal order. Until Defendants arrived at their home at around 6 p.m., the Canters were unaware of any of the happenings of the day. The parties dispute whether Eric Canter, Linda's adult biological child, answered the door or if Defendants entered the home on their own initiative. Defendants removed all the children over a period of about two hours. Shortly after the process began, Linda and Susan Canter arrived home. When they were apprised of the conduct of K.C., both women denied that K.C. was capable of such action and accused Ro.C. of lying. Throughout the removal process, Plaintiffs purportedly offered alternatives to the removal of the children but were ignored by Defendants. No interview of Susan or Linda was conducted during this time.

The following day, without a warrant or removal order, Niles took into protective custody thirteen-year-old D.C., who had spent the previous night at a friend's house. Also on December 17, a preliminary hearing was conducted before Referee Iva Arbuckle, who entered orders indicating that notice of the hearing was provided as required by law, that it was contrary to the interests of the children to remain in the home, and that the children be placed with the FIA. Arbuckle then adjourned the preliminary hearing until December 23, 2003. Later that same night, after the initial court hearing, Defendant Mahtina Rubritius removed K.C. from the home with the approval of Warren. Throughout this entire process, no report indicated that Linda or

5

Susan posed a threat of physical harm to the children. The reports did indicate, however, the possibility or probability of neglectful supervision.

Before the continuation of the preliminary hearing, Reeves and Ambs continued their investigation, which corroborated Ro.C.'s story and revealed multiple other incidents of inappropriate sexual conduct and assault between other children in the Canter home. On December 19, 2003, the family court issued a removal order for C.C. only.

At the continued preliminary hearing on December 23, Plaintiffs' counsel stipulated that there was probable cause as to Linda Canter to proceed based on the issue of whether there is "an unfit home environment because of sexual activity among her children." Plaintiffs' counsel further stipulated to the facts in the petition against Susan Canter but argued that they did not state a claim upon which relief may be granted. The court denied Plaintiffs' Motion to Dismiss, stating "I'm really satisfied, at least from a probable cause determination, that there is sufficient evidence of knowledge, and certainly there was a duty to protect her children."

Seven of the Canter children were held in emergency custody for four months while the case was in pre-trial stages. Eventually, four of the children returned to the Canter home in April 2003. Ro.C. returned to the home in June 2004. In July 2004, the FIA dropped the charges against Susan, and three days later, the court dismissed the case against Linda. Plaintiffs brought this suit, alleging violations of the Fourth and Fourteenth Amendments.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiffs contend that the act of taking the children out of their home without a court order or due process was unjustified and unconstitutional. Plaintiffs note that there was no indication of abusive parenting and, as such, there was no emergency to justify Defendants' actions. Plaintiffs argue that the Fourth Amendment warrant requirement applies to child-removal situations; before the state removes children from their home, the state must provide some form of pre-deprivation due process; the circumstances of this case did not create a child-abuse emergency; and the only permissible governmental purpose for taking children is to protect them from an abusive home. Further, Plaintiffs argue that the liberty right manifest in the Due Process Clause of the Fourteenth Amendment includes a right to family integrity by

7

virtue of which parents and their children enjoy protection against unjustified state interference. Plaintiffs frame the critical inquiry from which all other issues flow as one of emergency, which Plaintiffs believe to be an issue for the jury. Plaintiffs concede that "[i]f there was an emergency, then no warrant was required to enter the home . . . no warrant or removal order was required to seize the children . . . no prior notice and hearing were required . . . and substantive due process is satisfied by a compelling governmental interest in protecting the children." Additionally, Plaintiffs contend that Defendants' course of action, even if justified by exigent circumstances, was not "narrowly tailored to achieve that end." *Bartell v. Loisher*, 125 F.3d 550, 558 (6th Cir. 2000).

Defendants respond that the search was consensual or, in the alternative, that it was justified by exigent circumstances, which permit the removal of children where reasonable grounds exist that the children are in imminent danger of serious harm. Defendants argue for the applicability of the community-caretaker test. They further posit that the Fourth Amendment controls the matter, thereby rendering Plaintiffs' Fourteenth Amendment claim moot. Defendants observe that Plaintiffs received a hearing within 24 hours after removal into protective custody as required by law. Lastly, Defendants argue that they are entitled to either qualified or absolute immunity. Defendant Niles, in addition to the defenses raised by the other Defendants, argues that he was entitled to rely on Officer Ambs's conclusion that exigent circumstances existed.

### A. FOURTH AMENDMENT—UNREASONABLE SEARCH

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. Under Fourth Amendment jurisprudence, governmental entry into a

private dwelling constitutes a "search." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Generally, warrantless searches are unreasonable unless they satisfy a valid exception, which includes valid consent or exigent circumstances. *Katz v. United States*, 389 U.S. 347, 357 (1967). The exigent-circumstances exception to the warrant requirement is narrow in scope. *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). The government bears the burden of rebutting the presumption that a warrantless entry was unreasonable. *United States v. Oliver*, 686 F.2d 356, 371 (6th Cir. 1982).

Of the four categories of exigent circumstances delineated by the Sixth Circuit, only "risk of danger" is at issue in this case. *See United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). Although dependent on the facts of a particular case, exigent circumstances may be defined as those situations in which "real immediate and serious consequences that would certainly occur were a police officer to postpone[] action to get a warrant." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994) (internal quotations omitted). Stated another way, courts have found exigent circumstances where there is a "need to protect or preserve life or avoid serious injury." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). The mere possibility of danger or harm cannot suffice—it must be real and immediate. *See, e.g.*, *Tenenbaum v. Williams*, 193 F.3d 581, 594 (2d Cir. 1999). The Michigan Court Rules effectively incorporate the exigent-circumstances exception by authorizing an officer "without court order [to] remove a child from the child's surroundings and take the child into protective custody if, after investigation, the officer has reasonable grounds to conclude that the health, safety, or welfare of the child is endangered." Mich. Ct. R. 3.963(A).

The Court finds that the factual circumstances underlying this case amounted to exigent circumstances. Ro.C. was an 11-year-old girl who revealed that she had been sexually molested

by her nephew by adoption and sexually assaulted by her adopted brother on multiple occasions, as recently as the previous evening.³ In light of the frequency of the assaults and their unwanted nature, the case presents a situation in which "real immediate and serious consequences . . . would certainly occur were a police officer to postpone[] action to get a warrant." *O'Brien*, 23 F.3d at 997 (internal quotations omitted).

Plaintiffs attempt to restrict the emergency or exigent-circumstances issue to whether there was evidence of child abuse at the hands of the Linda or Susan Canter. Plaintiffs argue that they should have been given the opportunity to address the situation internally. In support of this argument, Plaintiffs reference the fact that, prior to K.C.'s assaults on Ro.C., Plaintiffs had learned that C.C. was molesting Ro.C. Plaintiffs allege that they were able to stop C.C.'s

---

³ Plaintiffs trivialize the underlying actions of C.C. and K.C. constantly. Among other categorizations, Plaintiffs describe the children as "naughty" and state that K.C. and Ro.C. were engaging in "sexual shenanigans" and were "underage participants." Plaintiffs even argue that:

> Whatever disabilities, hormones, perversion, or adolescent poor judgment was driving the two teenage boys and a *pre-teen girl* in the home to engage in sexual activity, as a matter of law this is not the kind of situation that the Constitution permits the state to rectify by summarily taking all the children in the home from their parents.

(emphasis supplied). Consonant with such arguments, Plaintiffs declare that the sexual interaction between 14-year-old K.C. and 11-year-old Ro.C. was consensual. The Court is mystified at such a categorization. The age of consent under the law is 16. *See* Mich. Comp. Laws § 750.520b. What possesses Plaintiffs to believe that an 11-year-old, developmentally-disabled child is capable, legally or otherwise, of consenting to sexual intercourse escapes the Court's comprehension. The persistent belittling of K.C.'s actions is frivolous, offensive, and reprehensible. It is that much more so in light of the absence of evidence or even suggestion that the intercourse was consensual. Plaintiffs paint a picture of Ro.C. as a sexually maladjusted child with a history of acting out sexually toward others. Even accepting that as true and notwithstanding the legal consent requirements, it does not render every one of Ro.C.'s subsequent sexual encounters as consensual. Ro.C. did not like what K.C. was doing to her and wanted him to stop. The Court cannot fathom how any individual could refer to these sordid facts as "naughty," "shenanigans," and most especially, "consensual."

molestation of Ro.C. when it was brought to their attention. Plaintiffs believe that they could have similarly ended K.C.'s assaults. Yet, Plaintiffs' knowledge of prior abuse by C.C. only speaks to Plaintiffs' *inability* to protect Ro.C. in the home environment as Ro.C. endured abuse from two different males within her home. Plaintiffs also argue that Defendants' application of exigent circumstances should be rejected because the exigency is "unproved." The Court disagrees. Based on the credible testimony of Ro.C., criminal sexual conduct was occurring within the home, and, knowing that at least two of the males in the house of nine children had subjected at least one of the girls to unwanted sexual activities, Defendants were justified in their actions. Plaintiffs curiously argue that "it is undisputed that there was no imminent risk of death or serious physical injury to the Canter children." The Court finds that unwanted sexual intercourse by a 14-year-old against his 11-year-old adopted sister qualifies as imminent risk of serious physical injury. Further, Defendants knew at the very least that Linda and Susan knew of C.C.'s previous violations of Ro.C. Accordingly, a reasonable officer in the same circumstances would reasonably believe that the home environment was unsafe and that exigent circumstances existed. *Ewolski v. City of Brunswick*, 287 F.2d 492, 501 (6th Cir. 2002). Regarding this count, then, all Defendants are entitled to summary judgment. Because the Court finds that exigent circumstances existed, it declines the opportunity to discuss the applicability of the community-caretaker exception.

### B. FOURTH AMENDMENT—UNREASONABLE SEIZURE

Although related to claims of Fourth Amendment unreasonable searches, claims of Fourth Amendment unreasonable seizures require separate analysis. *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 806 (W.D. Mich. 2004). Under the purview of the Fourth Amendment, a person is

seized "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Seizure alone does not give rise to a colorable claim under section 1983 unless such seizure is also unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). The act of removing children from their custodial home constitutes a "seizure" under the Fourth Amendment. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 2000).

The reasonableness test under the Fourth Amendment "is not capable of precise definition or mechanical application . . . [and] its proper application requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). As discussed above, exigent circumstances existed in this case. The facts surrounding the actual removal of the children further Defendants' claims of reasonableness. When Defendants arrived, Linda and Susan were not at home and when C.C. emerged from upstairs and learned why Defendants were present, he punched a hole through the wall. Further, when Susan and Linda were informed about the allegations, they both called the victim Ro.C. a liar and proclaimed K.C.'s innocence. This environment, coupled with the credible testimony of Ro.C., reinforced the exigent circumstances of the case.

Defendants could have chosen to remove only K.C. and C.C. but doing so would have created a risk to any other children in and around any temporary home into which they would have been placed. Thus, Defendants' seizure of the children was justified by exigent circumstances and reasonable under the circumstances of the case. *Id.*

### C. PROCEDURAL DUE PROCESS

The question raised by procedural-due-process claims is not focused on the actual deprivation of a fundamentally protected interest; rather, such claims look to whether the deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Analysis of such claims is to be conducted based on the totality of the circumstances in a particular case. *Doe v. Staples*, 706 F.2d 985, 989 (6th Cir. 1983) ("due process is flexible and calls for such procedural protections as the particular situation demands"). Generally, "at a minimum due process requires a written order unless exigent circumstances are present." *O'Donnell*, 335 F. Supp. 2d at 812.

The right to "family integrity" has been held to be a fundamental liberty interest. *See, e.g.*, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Lassiter v. Dep't of Social Servs. of Durham County*, 452 U.S. 18, 68 (1981). Such an interest is also described as parents having "a fundamental liberty interest in the custody of their children and that state intervention in the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Temporary deprivations of physical custody are no exception—they also require a hearing within a reasonable time. *Smith v. Williams-Ash*, 173 Fed. Appx. 363, 366 (6th Cir. 2005).

Exigent circumstances existed in this case. As such, the facts of the case were such that a pre-deprivation hearing was not required, and due process did not require an investigation. *O'Donnell*, 335 F. Supp. 2d at 812. The Canters were granted a hearing within 24 hours of the removal of the children. Under the facts of the case, this satisfied procedural-due-process concerns.

### D. SUBSTANTIVE DUE PROCESS

Defendants argue that the Fourth Amendment controls the issue before the Court and, as such, the Court should dismiss Plaintiffs' Fourteenth Amendment substantive-due-process claim. Generally speaking, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Cases discussing this principle within the ambit of family integrity claims have held that "[o]nly the person toward whom the state action was directed, and not those incidentally affected may maintain a § 1983 claim." *See, e.g.*, *Divergilio v. Skiba*, 919 F. Supp. 265, 269 (E.D. Mich. 1996) (quoting *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir. 1991)). Here, because Plaintiffs bring suit individually and as next friend to the minor Plaintiffs, the Court holds that the Fourth Amendment does not foreclose the applicability of the Fourteenth Amendment. *See id.* ("plaintiff parents do have standing to sue for deprivation of their own liberty interest in creation and maintenance of the parent-child relationship"); *see also* Mark Brown, *Rescuing Children from Abusive Parents: The Constitutional Value of Pre-Deprivation Due Process*, 65 Ohio St. L.J. 913, 956 (2004) ("Lower courts' near-unanimous conclusion that both the Fourth and Fourteenth Amendments apply to rescues accordingly seems sensible and correct.").

In order "[t]o state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). In the context of family-

integrity claims, the government's interest in protecting children stands on equal ground with the fundamental interest in the family. *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2000).

Plaintiffs cite several cases for the proposition that "the Canter mothers had a right to deal with their children's sexual misbehavior themselves as they saw fit." In one such case, *In re Kurzawa*, 290 N.W.2d 431 (Mich. Ct. App. 1980), the court addressed a situation in which the probate court terminated parental rights because the emotionally-disturbed child had been acting out violently to his parents, others in the neighborhood, and animals. The parents were both physically disabled. The court held that sufficient evidence had not been presented to terminate parental status. The present matter is distinguishable on multiple grounds, including the fact that it does not involve the termination of parental rights. Further, insofar as *Kurzawa* stands for the proposition alleged by Plaintiffs, the petitions in that case did not "even hint at the type of neglect contemplated by the statute as authorizing the termination of parental rights." *Id.* at 436. Here, in contrast, parental neglect was alleged, and exigent circumstances existed to remove the children temporarily.

Plaintiffs also argue that, even if a sufficient exigency existed, the removal of all the children was not a solution narrowly tailored to achieve the end sought. Plaintiffs suggest that simply informing them of the "sexual misbehavior" would have allowed them to separate the boys from the girls "until the problem could be dealt with by effective parental or professional interventions." Plaintiffs' arguments are unpersuasive, especially considering the previous incidents of sexual molestation within the home. Defendants' actions were calculated under exigent circumstances in order to protect the minor children as well as children in other foster homes from further sexual abuse. As such, their actions were not deliberate or reckless as required to sustain a substantive due process claim. *See Mitchell*, 487 F.3d at 377.

15

### E. IMMUNITY

Because the Court finds that Defendants' actions were justified by exigent circumstances, it declines to consider whether the absolute and qualified immunity doctrines apply to Defendants.

### V. CONCLUSION

IT IS ORDERED that the Cross-Motion for Summary Judgment by all Plaintiffs [dkt 35] is DENIED.

IT IS FURTHER ORDERED that the Motion for Judgment or Alternatively to Dismiss by Defendants Kissimmee Reeves, Lujuana Warren, Tanda Reynolds, Tom Brideau, Mark Prelesnik, and M. Rubritius [dkt 33] is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, Alternatively, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) by Defendant Jay Niles [dkt 34] is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 1, 2008

CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 1, 2008.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290